UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FOUR BLIND MICE d/b/a THE DELACHAISE, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 23-4508** |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON** | **SECTION: "G"** |

### ORDER AND REASONS

Before the Court is Defendant Certain Underwriters at Lloyd's, London's ("Underwriters") Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1] Underwriters argue that this matter should be dismissed for lack of subject matter jurisdiction because there is no possibility that the amount in controversy will exceed $75,000 for each Name subscribing to the policy.[2] In opposition, Plaintiffs Four Blind Mice d/b/a The Delachaise and Hayes Holdings (collectively "Plaintiffs") argue that the amount in controversy is met based on the syndicates listed in the insurance policy.[3] Considering the motion, the opposition, the applicable law, and the record, the Court finds that Plaintiffs have failed to establish the amount in controversy exceeds $75,000 for each Name subscribing the policy, and thus, the Court grants Underwriters' motion.

### I. Background

Plaintiffs owned properties located at 3442 St. Charles Ave., New Orleans, Louisiana 70115 and 7708 Maple St., New Orleans, Louisiana 70118 ("the Properties").[4] The properties were

---

[1] Rec. Doc. 15.

[2] *Id.*

[3] Rec. Doc. 18.

[4] Rec. Doc. 1 at 3.

insured with Underwriters bearing policy number 731460 ("the Policy").[5] On August 29, 2021, Hurricane Ida made landfall causing damages to the properties.[6] The complaint alleges that despite receiving sufficient proof of loss, Underwriters failed to timely and adequately tender payment under the policy.[7] Plaintiffs state that the policy provided coverage for all the damages sustained to the properties.[8] Plaintiffs allege that Underwriters have acted in violation of Louisiana Revised Statute §§ 22:1892 and 22:1973.[9]

On August 26, 2023, Plaintiffs filed a complaint against Underwriters in this Court.[10] The complaint states that this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).[11] On May 30, 2024, Underwriters filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction.[12] On June 18, 2024, Plaintiffs filed an opposition to the motion.[13] On June 21, 2024, Underwriters filed a reply brief.[14]

## II. Parties' Arguments

### A.   *Underwriters' Arguments in Support of the Motion*

Underwriters argue that this case should be dismissed for lack of subject matter

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 2.

[12] Rec. Doc. 15.

[13] Rec. Doc. 18.

[14] Rec. Doc. 20.

jurisdiction.[15] Underwriters contend that there is no possibility that the amount in controversy will exceed $75,000 for each Name and/or Member subscribing to the policy.[16] Underwriters state that Plaintiffs have provided an estimate of damages totaling $152,781.28, plus statutory penalties, attorneys' fees, and other damages pursuant to Louisiana Revised Statute §§ 22:1973 and 22:1892.[17] Underwriters assert that there are eight syndicates subscribed to the policy.[18] Even assuming that the amount in controversy is $320,840.69, as stated by Plaintiffs, Underwriters argue that this does not exceed the jurisdictional minimum for each syndicate.[19]

Underwriters argue that the Fifth Circuit and other courts have found that diversity jurisdiction is destroyed if a plaintiff cannot prove it has a claim for over $75,000 against each Name and/or Member subscribing to the policy.[20] Underwriters contend that the members of eight separate syndicates are subscribed to the policy.[21] Even assuming that each syndicate had only one member and assumed equal portions of the risk, Underwriters argue that Plaintiffs would have to establish damages in the amount of $600,000 to meet the jurisdictional minimum.[22]

In fact, Underwriters contend that there are seven syndicates subscribing to the policy through Contract B0142AA2102111 which assumes 75% of the total risk.[23] Underwriters state

---

[15] Rec. Doc. 15-1 at 1.

[16] *Id.* at 2.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 4.

[21] *Id.*

[22] *Id.*

[23] *Id.*

that of those seven syndicates, one syndicate only assumes 5.08% of the total risk.[24] Underwriters assert that Plaintiffs would have to establish damages in the amount of $1,476,377.95 to meet the jurisdictional minimum.[25]

### B. *Plaintiffs' Arguments in Opposition to the Motion*

In opposition, Plaintiffs contend that Underwriters have failed to present any evidence showing the number of Names subscribing to the policy and the allocation of risk.[26] Plaintiffs state that the total amount in controversy before consequential damages and penalties is $324,292.69.[27]

Plaintiffs assert that the policy contains a schedule of participation showing that Contract B0142AA210211 subscribes to 75% of the risk and Contract B0142AA2104228 subscribes to 25% of the risk.[28] Applying these allocations, Plaintiffs indicate that Contract B0142AA2102111 covers $243,219.51[29] and Contract B0142AA2104228 covers $81,073.18,[30] and thus, the amount in controversy is met.[31]

### C. *Underwriters' Arguments in Further Support of the Motion*

Underwriters contend that Plaintiffs mistakenly identify Contract B0142AA210211 and Contract B0142AA2104228 as syndicates subscribed to the policy, but these are two binding

---

[24] *Id.*

[25] *Id.* at 4–5.

[26] Rec. Doc. 18 at 1.

[27] *Id.* at 2.

[28] *Id.* at 3.

[29] 75% of $324,292.69.

[30] 25% of $324,292.69.

[31] Rec. Doc. 18 at 3.

authorities to which eight total syndicates have subscribed.[32] Underwriters explain that seven syndicates subscribe to the policy through binding authority B0142AA210211 to insure 75% of the total risk, and one syndicate subscribed to the policy through B0142AA2104228 to insure 25% of the risk.[33] Underwriters assert that of the seven syndicates subscribing to B0142AA210211, one syndicate insures only 5.08% of the total risk.[34] Underwriters argue that considering one syndicate only shares 5.08% of the total risk, the amount in controversy would need to be at least $1,476,377.95 to establish the jurisdictional minimum.[35]

Underwriters contend that the attached declaration of Mallory White, claims examiner for the third-party administrator for Underwriters, plainly establishes that there are eight total syndicates subscribed to the policy and the percentage of risk assumed by each syndicate.[36]

### III. Legal Standard

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure enable parties to challenge the subject matter jurisdiction of the district court.[37] Federal courts have diversity jurisdiction over a case if the parties are citizens of different states and the matter in controversy exceeds $75,000.[38] The party asserting federal jurisdiction bears the burden of proof that jurisdiction does in fact exist.[39] A lack of subject matter jurisdiction may be found in the complaint

---

[32] Rec. Doc. 20 at 1.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 2.

[36] *Id.*

[37] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001).

[38] *See* 28 U.S.C. 1332(a).

[39] *Id.*

alone, the complaint supplemented by the undisputed facts evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of undisputed facts.[40] A motion to dismiss under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.[41]

### IV. Analysis

Underwriters argue that this case should be dismissed for lack of subject matter jurisdiction because Plaintiffs cannot prove that the amount in controversy exceeds $75,000 for each Name subscribing to the policy.[42] In opposition, Plaintiffs argue that Underwriters have failed to present evidence showing the number of Names subscribing to the policy and the allocation of risk.[43] In further support of the motion, Underwriters attach a sworn declaration from Mallory White ("White"), the claims examiner for the third-party administrator for Underwriters.[44]

White states that there are eight total syndicates subscribing to Certificate Number 731460.[45] White states that seven of these syndicates subscribe through binding authority B0142AA2102111 and insure 75% of the total risk, divided as follows: Liberty Management Agency Limited, 22.5%; Lancashire Syndicate, 21.8%; Amlin Underwriting Limited, 14.51%; Ascot Underwriting Limits, 9.67%; Talbot Underwriting Limited, 10.75%; Blenheim Syndicate,

---

[40] *Id.*

[41] *Id.*

[42] Rec. Doc. 15.

[43] Rec. Doc. 18.

[44] Rec. Doc. 20-1.

[45] *Id.* at 2.

14.51%; Atrium Syndicate, 6.77%.[46] White states that one syndicate, Convex Insurance UK Limited, subscribes through authority B0142AA2104228 and insures 25% of the total risk.[47]

The Fifth Circuit has previously described the unique nature of Defendant Certain Underwriters at Lloyd's, London's operating model, finding that:

> Lloyd's of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Thus, a policyholder insures *at* Lloyd's but not *with* Lloyd's. The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks.... Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically, hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint.[48]

The Fifth Circuit has affirmed Underwriters' assertion that the $75,000 minimum must be met against each individual Name.[49] Given this precedent, the Court finds that Plaintiffs may not aggregate their claims against individual Names, and therefore, must plead that the $75,000 jurisdictional amount is met for each name. Plaintiffs has not asserted facts or presented evidence which would indicate that the amount in controversy is met as to all Names sued under the policy. As such, the Court finds that federal subject matter jurisdiction is lacking, and Plaintiffs' claims must be dismissed.

Accordingly,

---

[46] *Id.*

[47] *Id.*

[48] *Corfield v. Dallas Glenn Hills LP,* 355 F.3d 853, 857–58 (5th Cir. 2003).

[49] *See Team One Properties LLC v. Certain Underwriters at Lloyd's London*, 281 Fed. Appx. 323, *1 (5th Cir. 2008). *See also G&M Holding, Inc. v. Certain Underwriters at Lloyd's of London*, 2008 WL 215842 (E.D. La. January 23, 2008) (Barbier, J.); *McAuslin v. Grinnell Corp.*, 2000 WL 1059850 (E.D. La. August 1, 2000) (Vance, J.); *Rips, LLC v. Underwriters at Lloyd's London,* 2015 WL 2452339 (E.D. La. May 21, 2015) (Berrigan, J.).

**IT IS HEREBY ORDERED** that Underwriters' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**. Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**NEW ORLEANS, LOUISIANA**, this  23rd  day of July, 2024.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**